# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**FREDDY MONTALVO et al.,**

**Plaintiffs**

**v.**                                              **CIVIL NO. 12-1568 (GAG)**

**LT's BENJAMIN RECORDS, INC. et al.,**

**Defendants.**

## OPINION AND ORDER

Plaintiffs in this matter, Angel Martínez Alicea, Reynaldo Colón Vega, Raul Roldán Rivera, Freddy Montalvo, Glen Turley, Anthony Calo Cotto, and Aaron Peña (collectively "Plaintiffs") brought this action against LT's Benjamin Records, Inc., Mas Flow, Inc., Francisco Saldaña, Victor Cabrera, Francisco Saldaña, d/b/a White Kraft Publishing and Blue Kraft Publishing, and EMI Music Publishing (collectively "Defendants"), seeking redress for, inter alia, alleged acts of copyright infringement, breach of contract, unjust enrichment, fraud, and conversion.  Plaintiffs bring their federal claims pursuant to the Copyright Act, 17 U.S.C. § 101.

Presently before the court is Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint or, in the alternative, for a more definite statement.  (Docket No. 186.)  In sum, Defendants argue that Plaintiffs fail to state a copyright claim upon which relief can be granted, thereby depriving this court of the necessary subject matter jurisdiction to adjudicate the remaining state law claims against Defendants.  (Id.)  Plaintiffs opposed the motion.  (Docket No. 188.)  Defendants thereafter responded to Plaintiffs' opposition.  (Docket No. 193.)  After reviewing the

Civil No. 12-1568 (GAG)

pleadings and pertinent law, the court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 186.

## I.      Standard of Review

As courts of limited jurisdiction, the federal courts must construe their jurisdictional grants narrowly.  Destek Grp. v. State of N.H. Pub. Utils. Comm'n., 318 F.3d 32, 38 (1st Cir. 2003). Consequently, the party asserting jurisdiction carries the burden of showing the existence of federal jurisdiction.  Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).  When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the court "may consider whatever evidence has been submitted, such as . . . depositions and exhibits."  Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996); Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 132 (D.P.R. 2007).  Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions.  Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994); Torres, 523 F. Supp. 2d at 132.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court.  See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id.  A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678-79.  Second, the court must then "take the

Civil No. 12-1568 (GAG)

complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55.   Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense.   Id. (citing Iqbal, 556 U.S. at 678-79).   This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.   Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"   Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).   If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility."   Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

## II.   Relevant Factual and Procedural Background

Plaintiffs are producers of music in the Raggaeton musical genre.   (See Docket No. 183 at ¶ 2.)   Defendants Saldaña and Cabrera are co-founders of the production companies Mas Flow and LT's Benjamin Records.   (Id. at ¶ 45-47.)   From the years 2004 to 2009, Plaintiffs created numerous original musical compositions at Mas Flow's studios, pursuant to artist and producer agreements.   (Id. at ¶ 8.)   There were two different artist and producer agreements with Mas Flow, of which all Plaintiffs were parties.   In the first line of agreements, which Alicea, Vega, and Montalvo were parties, said plaintiffs granted Mas Flow all rights, titles, and interests in the copyright to all masters they created during the term of the agreement, as such masters were considered "works made for hire."   (Docket No. 185-2 at 25.)   A master was defined in the

Civil No. 12-1568 (GAG)

agreement as "any recording of sound, whether or not coupled with a visual image, by any method and on any substance or material, whether now or hereafter known, that is or is intended to be on a Record or [digital electronic music distribution]."  (Docket No. 185-2 at 27.)  The agreement also granted Mas Flow "an irrevocable license under copyright to reproduce each Controlled Composition on Records and distribute such Records in the United States and Canada," in exchange for mechanical royalties.  (Id. at 26.)  A Controlled Composition was defined as "a Composition wholly or partly written, owned or controlled by [Plaintiff] . . . an individual producer or any Person in which [Plaintiff] . . . or an individual producer has a direct or indirect interest." (Id.)

In the second line of agreements, which Rivera, Cotto, and Peña were parties, said plaintiffs exclusively granted all rights to master recordings created and/or worked on by them to Mas Flow, as such masters were considered "works made for hire," and further agreed that Mas Flow "may dispose of these master recordings as it sees fit and necessary in any electronic or digital platform, presently known or invited in the future."  (Docket No. 185-3 at 15-16.)  The agreement also allowed said plaintiffs to retain ownership of the compositions or works created by them during the term of the agreement, but granted Mas Flow "an exclusive, perpetual, and irrevocable license . . . for the commercial exploitation of all the exclusive rights recognized and inherent in these works/compositions" in exchange for royalties.  (Id. at 14-15.)

In addition to the artist and producer agreements, all Plaintiffs entered into management contracts with Mas Flow, in which they agreed that Mas Flow would advise them in all matters pertaining to their career in the entertainment industry for the term of the agreement.  (See Docket Nos. 185-2 at 30 and 185-3 at 16-17.)

4

Civil No. 12-1568 (GAG)

Throughout the term of the agreements between Plaintiffs and Mas Flow, Plaintiffs allege that Mas Flow, and later LT's Benjamin Records (the alleged successor in interest of Mas Flow), accepted completed master recordings for various compositions that were written and produced by Plaintiffs, and altered said masters by removing Plaintiffs from the final version of many the masters and replacing their parts with other parties' work, and then attributed the entire work to the other parties.  (Docket No. 183 at ¶ 9.)  Plaintiffs further allege that they were not paid any monies owed to them for the exploitation of such works, despite the clear language in the agreements which discusses payment of mechanical and other royalties and a share of profits in exchange for Plaintiffs granting licenses to Defendants in their compositions.  (Id. at ¶ 12, 59-60.)

On August 17, 2012, Plaintiffs filed their first amended complaint against various defendants, including the present Defendants, asserting a myriad of claims, including copyright infringement, violations of the Racketeer Influenced and Corrupt Organizations Act and Lanham Act, unjust enrichment, and fraud.  (See Docket No. 9.)  Since then, the court has allowed Plaintiffs to amend their complaint twice, with the latest amendment being filed on July 21, 2014. (See Docket No. 183.)  The third amended complaint before this court sets forth eleven claims against Defendants, alleging the following: (1) breach of contract; (2) breach of management contract; (3) direct copyright infringement; (4) contributory copyright infringement; (5) vicarious copyright infringement; (6) unjust enrichment; (7) joint authorship in all works described in the complaint; (8) breach of fiduciary duty; (9) fraud; (10) conversion; and (11) copyright reversion for all works assigned by Defendants.  (Id.)

Defendants moved to dismiss Plaintiffs' third amended complaint, arguing that Plaintiffs fail to state a federal copyright claim upon which relief can be granted, thereby depriving this court of the necessary subject matter jurisdiction to adjudicate the remaining state law claims against

Civil No. 12-1568 (GAG)

1   Defendants.   (Docket No. 186 at 9-15.)   Additionally, Defendants move to dismiss each of

2   Plaintiffs' state law claims to the extent that the court holds that Plaintiffs assert a viable copyright

3   claim.  (Id. at 15-23.)

4   **III.**   **Discussion**

5         **A.**   <u>Copyright Infringement Claims</u>

6         As Plaintiffs' federal copyright claims grant this court jurisdiction to hear this cause of

7   action, the court begins its analysis by first addressing Defendants' arguments to dismiss Counts

8   III through V:  direct copyright infringement, contributory copyright infringement, and vicarious

9   copyright infringement.

10           1.   <u>Direct Copyright Infringement</u>

11         Defendants first argue that Plaintiffs' direct copyright infringement claim fails to state a

12   claim upon which relief can be granted simply because it is well-settled that uses of copyrighted

13   works within the scope of a nonexclusive license are immunized from copyright infringement

14   claims. (Docket No. 186 at 10-11.)  Defendants further argue that Plaintiffs' claim that Defendants

15   infringed upon their copyrights by failing to pay them the promised royalties sounds in breach of

16   contract, not copyright infringement.   (Id. at 11-12.)   Lastly, Defendants argue that because

17   Plaintiffs have failed to allege the registration for a majority of the compositions in question, they

18   have failed to meet the prerequisite for filing their claim: ownership of a valid copyright.  (Id. at

19   14-15.)  Plaintiffs respond by arguing that the failure of a nonexclusive licensee to pay royalties

20   does indeed constitute copyright infringement and also that the complaint provides sufficient

21   information to show that Plaintiffs either registered copyrights for the compositions or their

22   publishers did on their behalf. (Docket No. 188 at 3-9.)  Plaintiffs further contend that by altering

23

24

Civil No. 12-1568 (GAG)

Plaintiffs' master recordings, Mas Flow created derivative works of their compositions, thereby infringing upon Plaintiffs' copyrights.  (Id. at 9.)

To properly address Defendants' claims, the court first discusses the following legal principles that guide its analysis.  Copyright infringement occurs when another party exercises, without permission or other justification, any of the exclusive rights granted to the copyright owner.  Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005); see 17 U.S.C. § 106(a) (outlining six exclusive rights of copyright owner).  A *prima facie* case of copyright infringement requires proof of two elements: (1) ownership of a valid copyright and (2) the copying of constituent elements of the work that are original.  Johnson, 409 F.3d at 17.  When faced with such a claim, a defendant may raise the affirmative defense that he has a license to use the copyrighted work that immunizes him from liability.  See John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 40 (1st Cir. 2003); Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998).  A nonexclusive license can be limited in scope to permit the licensee to use the work in a particular manner.  See Estate of Hevia v. Portrio Corp., 602 F.3d 34, 41 (1st Cir. 2010).  While uses of a copyrighted work that stay within the bounds of a license do not infringe upon the copyright, see id., when the licensee acts outside the scope granted, the licensor can bring an action for copyright infringement. See Jacobsen v. Katzer, 535 F.3d 1373, 1380 (Fed. Cir. 2008).

"Enforcing a copyright license raises issues that lie at the intersection of copyright and contract."  MDY Indus., LLC v. Blizzard Entm't, Inc., 629 F.3d 928, 939 (9th Cir. 2010), as amended on denial of reh'g, (Feb. 17, 2011).  Whether the failure of a nonexclusive licensee to pay royalties constitutes copyright infringement turns on the distinction between a promise subject to a condition and a covenant or contractual promise.  Id.; Graham, 144 F.3d at 236.  Such distinction involves an inquiry into state contract law.  MDY Indus., 629 F.3d at 939; Graham, 144 F.3d at

7

Civil No. 12-1568 (GAG)

236.   Under Puerto Rico law, a covenant is a contractual promise or obligation, which consists of acting or refraining from acting in a specified way, and such obligation is immediately demandable.   See P.R. LAWS ANN. tit. 31, §§ 2991, 3041, 3371; see also Jarra Corp. v. Axxis Corp., 155 P.R. Dec. 764, 772 (2001).   A promise or obligation subject to a condition "'depend[s] upon the event constituting the condition.' . . .   In other words, conditional obligations, by nature, limit the ripening of certain contractual rights to the occurrence of the particular condition." Satellite Broad. Cable, Inc. v. Telefonica de Espana, 786 F. Supp. 1089, 1095, opinion adhered to as modified on reconsideration, 807 F. Supp. 210 (D.P.R. 1992) (citing P.R. LAWS ANN. tit. 31, § 3042).   For example, terms that limit the scope or grant in a license agreement serve as conditions to the agreement.   See MDY Indus., 629 F.3d at 939; Sleash, LLC v. One Pet Planet, LLC, No. 14-0863, 2014 WL 3859975, at *15 (D. Or. Aug. 6, 2014).   "Generally, [i]f the [licensee's] improper conduct constitutes a breach of a covenant undertaken by the [licensee] . . . and if such covenant constitutes an enforcible contractual obligation, then the [licensor] will have a cause of action for breach of contract, not copyright infringement."   Graham, 144 F.3d at 236 (internal quotation marks omitted) (quoting 3 NIMMER ON COPYRIGHT § 10.15[A], at 10-120).   "However, [i]f the nature of a licensee's violation consists of a failure to satisfy a condition to the license . . ., it follows that the rights dependant upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright."   Graham, 144 F.3d at 237 (internal quotation marks omitted); see also Peer Intern Corp. v. Latin American Music Corp., 161 F. Supp. 2d 38, 51 (D.P.R. 2001) (quoting Graham, 144 F.3d at 236-37).

An examination of the case law of the federal courts, including this district, reveals that the promise to pay royalties in a license agreement is generally considered a covenant, not a condition.

Civil No. 12-1568 (GAG)

See, e.g., MDY Indus., LLC, 629 F.3d at 939; Graham, 144 F.3d at 236; Peer Intern Corp., 161 F. Supp. 2d at 51-53.   Therefore, the failure to pay royalties constitutes a breach of contract, not copyright infringement.   Such breach of contract may nevertheless give rise to a claim for copyright infringement, but before a plaintiff can institute such a claim, he must affirmatively rescind the license.  Only then can he seek to hold the licensee liable for infringement for the uses of the work thereafter.  See Graham, 144 F.3d at 237 ("A material breach of a covenant will allow the licensor to rescind the license and hold the licensee liable for infringement for uses of the work thereafter."); Peer Intern Corp., 161 F. Supp. 2d at 51-52 (citing Graham and noting that the failure to pay royalties allows copyright owner to rescind from license agreement and then sue for future infringements).

        Turning to the present case, in light of the aforementioned principles, to the extent that Plaintiffs claim that Defendants' failure to pay them royalties for the exploitation of their original compositions constitutes copyright infringement, this claim fails as a matter of law.  Not only does federal case law dictate this result, but an examination of the plain language of both of the artist and producer agreements reveals that Mas Flow's promise to pay Plaintiffs royalties was not a condition precedent to Plaintiffs' grant of a limited license to their works, but rather a mere promise or covenant.[1]   The language of both agreements states that Mas Flow promised to compensate Plaintiffs for the license, but it did not condition the enforceability of the license upon such compensation.  (See Docket Nos. 185-2 at 26 and 185-3 at 15.)  More so, Plaintiffs do not

_____

[1] Although Plaintiffs cite Banco Popular de Puerto Rico v. ACEMLA, 678 F.3d 102 (1st Cir. 2012) for the proposition that the failure of a nonexclusive licensee to pay royalties constitutes copyright infringement, an examination of said case reveals that the First Circuit did not weigh in on this issue.  In Banco Popular, the First Circuit summarily affirmed the jury's verdict that Banco Popular infringed upon a publisher's copyright, even though Banco Popular claimed it had an implied license.  Id. at 111-12.  The court did not analyze the issue any further and, indeed, the First Circuit has not yet addressed the issue of whether failure of a nonexclusive licensee to pay royalties constitutes copyright infringement.

Civil No. 12-1568 (GAG)

allege that they affirmatively rescinded from the license agreements upon notice of Defendants' failure to pay royalties.  See Peer Intern Corp., 161 F. Supp. 2d at 52 ("A failure to pay royalties does not automatically cause a rescission of the agreement.")  Thus, Defendants' alleged failure to pay Plaintiffs' royalties is actionable under Puerto Rico contract law, not federal copyright law.  Accordingly, insofar as Plaintiffs allege a copyright infringement claim for Defendants' failure to pay royalties, the court **GRANTS** Defendants' motion to dismiss and thus **DISMISSES** Plaintiffs' said copyright infringement claim.

i.   Derivative Works

Despite the aforementioned holding, to the extent that plaintiffs Alicea, Vega, and Montalvo allege that Defendants created derivative works by removing their parts from the final version of many of their works and replacing their parts with other artists' work, (see Docket No. 183 at ¶ 9), said plaintiffs have sufficiently plead a plausible claim for relief.  As previously stated, a licensee who exceeds the scope of the license granted to him infringes upon the licensor's copyright.  See Jacobsen, 535 F.3d at 1380.  Copyright is commonly conceived as "a bundle of discrete exclusive rights . . . each of which may be transferred . . . and owned separately," New York Times Co. v. Tasini, 533 U.S. 483, 495-96 (2001), and thus the use of an exclusive right that was not transferred to the licensee constitutes infringement.

Here, the license agreements contained within Alicea, Vega, and Montalvo's artist and producer contracts granted Mas Flow the right to "*reproduce* each Controlled Composition on Records and *distribute* such Records in the United States and Canada."  (See Docket No. 185, Exhibit C at 26 (emphasis added).)  As such, said plaintiffs did not grant Mas Flow a license "to prepare derivative works based upon the copyrighted work"—one of the six exclusive rights owned by those plaintiffs under 17 U.S.C. § 106.  See 17 U.S.C. § 106(2).  In the complaint,

10

Civil No. 12-1568 (GAG)

Plaintiffs allege that Defendants accepted certain complete masters, altered them by removing their parts and replacing them with the work of third parties, and then attributed the entire work to that third party.   (See Docket No. 183 at ¶ 9.)   This factual allegation is sufficient to support the reasonable inference that Defendants are liable for infringing upon Plaintiffs' exclusive rights under copyright.[2]   See 1 NIMMER ON COPYRIGHT § 3.01 (noting that the Copyright Act defines a derivative work as "a work based upon one or more preexisting works"); see also 17 U.S.C. § 101. Insofar as Defendants argue that Plaintiffs did not allege such facts specifically within the direct copyright infringement claim, the court reminds Defendants that the complaint must be read as a whole.   See Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 55 (1st Cir. 2013).   "There need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action.   What counts is the cumulative effect of the [complaint's] factual allegations."   Id. (internal quotation marks omitted).   Plaintiffs' complaint clearly alleges that Defendants altered their works and added other artists' work to the compositions.

Moreover, although Defendants argue that said plaintiffs have failed to plead ownership of the copyright to many of the compositions included in their complaint, "the legal or *beneficial* owner of the copyright (or of an exclusive right thereunder) may institute an action for infringement."   Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005) (emphasis added).   Thus, to the extent that Alicea, Vega, and Montalvo allege that Defendants infringed upon their right to create

---

[2] Moreover, although Alicea, Vega, and Montalvo granted to Defendants all of their rights in the master recordings they produced during the terms of the agreements, such recordings constitute "the fixation of a series of musical, spoken or other sounds," see 17 U.S.C. § 101, as opposed to the rhythm, harmony, and melody, i.e., the artists' music in written form, which constitutes the composition.   See Newton v. Diamond, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002), aff'd, 349 F.3d 591 (9th Cir. 2003) ("A musical composition captures an artist's music in written form."); see also T.B. Harms Co. v. Jem Records, Inc., 655 F. Supp. 1575, 1577 (D.N.J. 1987) ("The sound recording is the aggregation of sounds captured in the recording while the song or tangible medium of expression embodied in the recording is the musical composition.").   Thus, by adding new artists' work into the songs written by said plaintiffs, Defendants were infringing upon the compositions, as opposed to the sound recordings because they were infringing upon the song itself by creating a derivative work, which they did not have the license to do.

Civil No. 12-1568 (GAG)

derivative works of their compositions and the copyrights were registered on their behalf as they

allege, they are the beneficial owners of the copyright and therefore have standing to pursue such a

claim.   Accordingly, insofar as plaintiffs Alicea, Vega, and Montalvo allege that Defendants

created derivative works from their compositions, thereby exceeding the scope of the license

granted to Defendants, the court **DENIES** Defendants' motion to dismiss this claim.

Unlike Alicea, Vega, and Montalvo, plaintiffs Rivera, Cotto, and Peña entered into a

license agreement that was not as limited in scope.   Said plaintiffs granted Mas Flow "an

exclusive, perpetual, and irrevocable license to [Mas Flow] for the commercial exploitation *of all*

*the exclusive rights recognized and inherent in these work/compositions*."   (Docket No. 185,

Exhibit I at 14.)   The agreement did however limit the license to compositions created during the

term of the agreement.   (See id.)   Thus, any creation by Mas Flow of derivative works from

compositions created during the term of the agreement did not constitute copyright infringement

because said plaintiffs had granted Mas Flow the right to exploit those compositions in such a

manner.   To the extent that said plaintiffs' plead otherwise in their complaint, the court notes that

exhibits attached to the complaint are properly considered part of the pleading for all purposes,

including Rule 12(b)(6).   See Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321

(1st Cir. 2008).   In the event that "a written instrument contradicts allegations in the complaint to

which it is attached, the exhibit trumps the allegations."   Clorox Co. Puerto Rico v. Proctor &

Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000).   Accordingly, plaintiffs Rivera, Cotto,

and Peña have failed to state a copyright infringement claim upon which relief can be granted for

any compositions created during the term of the agreements.   Thus, the court **GRANTS**

Defendants' motion to dismiss a claim for copyright infringement for any compositions created

during the term of said plaintiffs' agreements and thus **DISMISSES** this claim.

Civil No. 12-1568 (GAG)

ii.   "Mírala Bien" and "Paleta"

However, insofar as plaintiffs Rivera, Cotto, and Turley allege that Defendants did not have a license to exploit and distribute particular compositions, namely, "Mírala Bien" and "Paleta," because they were created outside of the term of the artist and producer agreements, such allegations state a plausible claim for relief.  (See Docket No. 183 ¶ 61-62.)  As owners of the copyright to those compositions, said plaintiffs had the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 106(3).  By distributing said compositions without the permission of the owners, i.e., a license, Defendants infringed upon their copyright.  Accordingly, plaintiffs Rivera, Cotto, and Turley have sufficiently plead allegations that state a plausible claim for copyright infringement with respect to those compositions.   Thus, the court **DENIES** Defendants' motion to dismiss the copyright infringement claim associated with those compositions.

iii.   "Sobrenatural"

Moreover, although plaintiffs Cotto and Peña allege that "the works contained in the album 'Sobrenatural' were created outside of the contract between Peña, Cotto, and [D]efendants," (Docket No. 183 ¶ 63), those works were allegedly "produced for Mas Flow" in 2007 and said plaintiffs "were producers at Mas Flow/LT's Benjamin from 2006 through 2009."  (See id. ¶ 23-27; Docket No. 185-4 at 18-19.)  As Cotto and Peña had signed the second line of agreements with Mas Flow that granted an exclusive irrevocable license to Mas Flow for the commercial exploitation of all the exclusive rights recognized and inherent in compositions created during the term of the agreement, this claim does not support a reasonable inference that Defendants are liable for copyright infringement of the compositions of that album.  As such, the court **GRANTS**

Civil No. 12-1568 (GAG)

Defendants' motion to dismiss the copyright infringement claim associated with these compositions and thus **DISMISSES** said claim.

iv.   <u>More Definite Statement</u>

Lastly, the court agrees with Defendants that, even though this is Plaintiffs' fourth time they have amended their complaint, many of the allegations remain confusing and convoluted. (<u>See</u> Docket No. 183.)   Consistent with the aforementioned discussion, Plaintiffs are hereby **ORDERED** to submit to the court on or before November 21, 2014, a supplemental brief with a more definite statement that specifically details which compositions they claim Defendants infringed upon by creating derivative works.   Plaintiffs shall also include the compositions that they claim were created before they entered into the second line of license agreements with Mas Flow (Rivera, Cotto, and Peña's agreements) and are thus not subject to such agreements.   The general allegations such as "including but not limited to" certain compositions and alleging that Defendants removed plaintiffs "from the final versions of many of these works" do not inform the court of the specific information required to adjudicate this dispute.   (<u>See</u> <u>id.</u> at ¶ 9.)   Furthermore, although Plaintiffs allege that Turley's copyrights in particular compositions were infringed upon, the complaint fails to allege which agreement Turley signed.   As such, Plaintiffs shall inform the court in the supplemental brief which agreement governed Turley's relationship with Defendants.

2.   <u>Contributory Copyright Infringement</u>

A defendant can also be found contributorily liable for copyright infringement, if he, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another."   <u>Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.</u>, 443 F.2d 1159, 1162 (2d Cir. 1971).   "The Supreme Court has stated that contributory liability 'may be predicated on actively encouraging (or inducing) infringement through specific acts. . . .'   <u>Metro-Goldwyn-</u>

14

Civil No. 12-1568 (GAG)

Mayer Studios, Inc., v. Grokster, Ltd., 545 U.S. 913, 942, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005).  Although the defendant must have knowledge of the infringing activity, 'the defendant need only have known of the direct infringer's activities, and need not have reached the legal conclusion that those activities infringed a copyrighted work." Jalbert v. Grautski, 554 F. Supp. 2d 57, 68 (D. Mass. 2008).

In articulating their claim for contributory copyright infringement, Plaintiffs allege:

> Defendants, Saldana, Cabrera, Mas Flow/LT Benjamin Records, willfully, knowingly and intentionally induced, caused, encouraged and/or assisted various third parties, including, but not limited to, various radio and televisions stations, to broadcast, publicly perform and/or otherwise exploit the Infringing Musical Works, containing the Original Compositions listed in Schedule "A", throughout the United States and Overseas even though Defendants knew or should have known, that they did not have Plaintiffs' written authorization or written consent to reproduce, broadcast, publicly perform or otherwise exploit the Original Composition due to non-payment of royalties.

(Docket No. 183 at ¶ 67.)  These allegations merely recite the elements of a contributory copyright infringement claim and thus fail to "nudge [the claim] across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Under the current pleading standards, "[a] plaintiff is not entitled 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernández, 640 F.3d at 12.  Therefore, the court must disregard as conclusory such factual allegations that are merely legal conclusions couched as fact.  See Iqbal, 556 U.S. at 678.  Without more, Plaintiffs' allegations are unsubstantiated and conclusory, and fail to allege a plausible entitlement for relief.  Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' contributory copyright infringement claim and thus **DISMISSES** said claim.

### 3.  Vicarious Copyright Infringement

"[T]o find a defendant vicariously liable for another's copyright infringement, the [c]ourt must find that the defendant had (1) the right and ability to supervise the infringing activity, and

Civil No. 12-1568 (GAG)

(2) a direct financial interest in the exploitation of copyrighted materials." <u>Jalbert</u>, 554 F. Supp. 2d at 67-68.  Similar to Plaintiffs' contributory copyright infringement claim, Plaintiffs again merely recite the elements of a vicarious copyright infringement claim.  Plaintiffs allege:

> Defendant and their employees, agents and representatives: (i) falsely indentified [sic] and designated a person or persons other than the Plaintiffs as the author, creator, performer, producer and or arranger of the Infringing Musical Works; (ii) manufactured, distributed, used, commercialized, sold and otherwise exploited the Infringing Musical Works; (iii) unlawfully profited from said exploitation of the Infringing Musical Works; and (iv) deprived Plaintiffs of substantial income directly or indirectly related to the exploitation of the Infringing Musical Works.

> Defendants and their employees, agents and representatives have the right and ability to manage, supervise and control the Infringing Musical Works and have a direct financial interest in the Infringing Musical Works.

(Docket No. at ¶ 73-74.)  The complaint thus simply recites the elements of the cause of action which, without more, is not sufficient.  <u>Twombly</u>, 550 U.S. at 555.  The allegations are deficient in regard to alleging how Defendants had the right to supervise the infringing activity and how Defendants had a direct financial interest in the exploitation of copyrighted materials.  Plaintiffs' allegations are unsubstantiated, conclusory, and devoid of any facts that support their mere recitation of the legal elements of this claim.  Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' vicarious copyright infringement claim and thus **DISMISSES** said claim.

    B.    <u>State Law Claims</u>

    In light of the court's determination that Plaintiffs pleaded sufficient facts to surpass the motion to dismiss threshold for copyright infringement, the court will now address Plaintiffs' state law claims.

        1.    <u>Breach of Contract</u>

Civil No. 12-1568 (GAG)

1    Defendants, while not disputing the existence or validity of the subject agreements between

2    them and Plaintiffs, argue that Plaintiffs' complaint "fail[s] to delineate with any degree of

3    cogency or clarity the nature and extent of any alleged breaches of the subject agreements by

4    [Defendants]." (Docket No. 186 at 15.)  Plaintiffs respond by arguing that the facts alleged are

5    sufficient to state a plausible claim for breach of contract. (Docket No. 188 at 18-21.)

6    "To properly assert a claim for breach of contract, a party must sufficiently allege (1) a

7    valid contract, (2) breach of that contract, and (3) resulting damages." First Medical Health Plan,

8    Inc. v. CaremarkPCS Caribbean, Inc., 681 F. Supp. 2d 111, 116 (D.P.R. 2010); see Rishell v. Med.

9    Card Sys., Inc., 925 F. Supp. 2d 211, 220 (D.P.R. 2013).  In their third amended complaint,

10   Plaintiffs allege that, in the subject artist and producer agreements, Defendants promised to pay

11   Plaintiffs mechanical and other royalties and promised a share in the profits derived from the

12   exploitation of Plaintiffs' original compositions, in exchange for the license to such copyrighted

13   compositions. (See Docket No. 183 at ¶ 12, 21, 30, 49-52.)  A review of the agreement, which is

14   attached to the complaint, reveals the same.  (See Docket No. 185-2 at 25.)  Plaintiffs allege that

15   despite such promises, Defendants have failed to account for and pay them the agreed upon

16   "royalties from the sales of the compositions, synchronization license fees, and performance

17   royalties derived from radio play, along with proceeds from performance and sales of digital

18   media." (Docket No. 183 at ¶ 50-51.)  As a result of said alleged breach, Plaintiffs claim that they

19   are due the royalties they are contractually entitled to receive.  (Id. at ¶ 52.)

20   On these facts as alleged, the court cannot find, as Defendants argue, that these allegations

21   are insufficient to surpass the plausibility standard.  If taken as true, as the court must at this stage

22   of the litigation, they are enough "to raise a reasonable expectation that discovery will reveal

23

24

17

Civil No. 12-1568 (GAG)

1   evidence of" a breach of the subject agreements.  <u>Twombly</u>, 550 U.S. at 556.  Accordingly, the

2   court **DENIES** Defendants' motion to dismiss Plaintiffs' breach of contract claim.

3                          2.   <u>Breach of Management Contract</u>

4           Defendants further argue that Plaintiffs "fail to specify even the most basic elements of a

5   claim for breach of contract regarding the purported management agreement" because such

6   agreement did not guarantee a certain number of opportunities for professional development.

7   (Docket No. 186 at 16-17.)  Plaintiffs respond by simply arguing that Defendants promised to

8   assist Plaintiffs with their careers and when they did not, Defendants breached the management

9   contract.  (Docket No. 188 at 21.)  The court's determination of whether Plaintiffs sufficiently

10  allege a breach of their management agreements requires it to review both agreements.

11          With respect to the management agreements between Mas Flow and plaintiffs Alicea,

12  Vega, and Montalvo, the court finds that such claim fails as a matter of law.  A review of the

13  agreement reveals that Mas Flow did not promise to procure any employment or engagements for

14  said plaintiffs; rather, Mas Flow simply promised to provide advice pertaining to their careers.

15  (<u>See</u> Docket No. 185-2 at 30.)  More so, the agreement also states that no breach by any party to

16  the agreement can be deemed material unless the party alleging the breach gives the breaching

17  party notice of such and thirty days to cure the breach.  (<u>See</u> <u>id.</u> at 36.)  Plaintiffs do not allege in

18  their complaint, nor do they even claim in their opposition to Defendants' motion to dismiss, that

19  they gave Defendants notice of their alleged breach.  Therefore, the plain language of the

20  agreement precludes said plaintiffs from stating a claim upon which relief can be granted.  <u>See</u>

21  <u>Clorox Co. Puerto Rico</u>, 228 F.3d at 32 ("[when] a written instrument contradicts allegations in the

22  complaint to which it is attached, the exhibit trumps the allegations").

23

24

18

Civil No. 12-1568 (GAG)

With respect to the management agreement between Mas Flow and plaintiffs Rivera, Cotto, and Peña, said plaintiffs' breach of contract claim also fails because the allegations in the third amended complaint are merely conclusory statements that do not articulate any factual basis as to how Defendants breached the agreement.   Plaintiffs have simply alleged that their agreements were "breached by [Defendants'] failure to provide 'opportunities for professional development' and 'promote his contracting by interest third parties', among other acts." (See Docket No. 183 at ¶ 55.)  In alleging such, said plaintiffs are merely rehashing the contractual language.  As the court must disregard as conclusory such factual allegations that are merely legal conclusions couched as fact, see Iqbal, 556 U.S. at 678, without more, said plaintiffs' allegations are unsubstantiated and conclusory and fail to allege a plausible entitlement for relief.  Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' breach of management claim and thus **DISMISSES** said claim.

### 3.   Unjust Enrichment

Turning to Plaintiffs' unjust enrichment claim, Defendants argue that said claim is "simply a repackaging of Plaintiff's breach of contract claims," and thus fails as a matter of law.  (Docket No. 186 at 17.)  Plaintiffs respond by arguing that, at the very least this claim is sufficient to allege plausible entitlement for relief against Saldaña and Cabrera individually, as they were not parties to the relevant contracts.  (See Docket No. 188 at 23.)

To prove a claim for unjust enrichment under Puerto Rico law, "[t]he following requirements must be present: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment; and (5) absence of a legal precept excluding application of enrichment without cause." Hatton v. Municipality of Ponce, 1994 P.R. Offic. Trans. 909, 605 (1994); see P.R. LAWS ANN. tit. 31, § 2992 ("Obligations are created by

Civil No. 12-1568 (GAG)

law, by contracts, by quasi contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs."); Puerto Rico Tel. Co. v. SprintCom, Inc., 662 F.3d 74, 97 (1st Cir. 2011).  Further, "it is well-settled under Puerto Rico law that the undue enrichment doctrine is not applicable where . . . there is a contract that governs the dispute at issue."  Puerto Rico Tel. Co., 662 F.3d at 97.

Here, the mere fact that both parties acknowledge that Plaintiffs and Mas Flow entered into two contracts that governed their relationship requires this court to **DISMISS** this claim against Mas Flow.  Additionally, the court **DISMISSES** the claim against LT's Benjamin Records because Plaintiffs allege that said defendant is the successor in interest of Mas Flow.  With respect to Saldaña and Cabrera, however, Plaintiffs have alleged enough facts to raise a reasonable expectation that discovery will reveal evidence of unjust enrichment.  Plaintiffs allege:

> Defendants have been unlawfully, willfully, fraudulently, illegally and without the consent and/or authorization of Plaintiffs, who are authors of the musical compositions and sound recordings, collecting royalties from the manufacturing, distributing, selling, advertising, marketing and exploiting, the albums, including but not limited to P'Al Mundo, Talento de Barrio, Sobrenatural, Los Benjamins-La Continuacion, and Erre XI, featuring the aforementioned works.

> Defendants have unlawfully, willfully, fraudulently and illegally not provided Plaintiffs any revenues, statements, reports and/or pertinent royalty payments for the use, administration, and/or exploitation of the aforementioned works.

(Docket No. 183 at ¶ 79-80.)  Accordingly, Plaintiffs have set forth enough facts to show that Saldaña and Cabrera were unlawfully enriched by collecting royalties and failing to give them to Plaintiffs.  Further, Defendants and Plaintiffs acknowledge that there was no contract between said defendants and Plaintiffs.  As such, at this stage in the litigation, Plaintiffs have set forth enough facts that requires the claim to proceed beyond the motion to dismiss hurdle.  Thus, the court

Civil No. 12-1568 (GAG)

**DENIES** Defendants' motion to dismiss Plaintiffs' unjust enrichment claim as to Saldaña and Cabrera.

### 4. Breach of Fiduciary Duty

With respect to Plaintiffs' breach of a fiduciary duty claim against Saldaña and Cabrera, Defendants argue that Plaintiffs' allegations are mere conclusory statements of law couched as fact and because there was no contractual privity between Plaintiffs and said defendants, this claim fails as a matter of law.  (See Docket No. 186 at 17-18.)  Plaintiffs respond by simply arguing that they have alleged sufficient facts to establish the existence of a fiduciary duty because said defendants agreed to manage Plaintiffs' careers and finances in the management contracts.  (See Docket No. 188 at 27.)  Plaintiffs allege:

> Upon information and belief, defendants have co-mingled and otherwise disposed of monies belonging to the [P]laintiffs.
>
> Due to [P]laintiffs also being signed to LT/Saldana's label, and Producers having management contracts with Saldana/LT, there is exists a special relationship between defendants and the [P]laintiffs.
>
> Saldana and Cabrera have a fiduciary duty regarding the safekeeping and correct accounting [P]laintiffs' royalties and income.
>
> Plaintiffs gave defendants complete control over collection of their royalties, and Saldana placed himself in a position of trust.
>
> Defendants, especially Saldana and Cabrera, breached that fiduciary duty by withholding said royalties belonging to [P]laintiffs and converting same for personal use.

(Docket No. 183 at ¶ 88-92.)  Further, Plaintiffs make clear in their opposition to Defendants' motion to dismiss that they are not asking this court to pierce the corporate veil of Mas Flow or LT's Benjamin Records.  (See Docket No. 188 at 22.)

Civil No. 12-1568 (GAG)

The court need not expel any further energy on this claim because an examination of these aforementioned allegations quickly reveals that Plaintiffs have merely alleged legal conclusions couched as fact.   Although Plaintiffs allege that Saldaña and Cabrera were parties to the management contracts, such contracts were between Mas Flow and Plaintiffs, not Saldaña and Cabrera.   Further, when the court ignores Plaintiffs' legal conclusions, all that is left for the court to use is that "Plaintiffs gave defendants complete control over collection of their royalties, and Saldaña placed himself in a position of trust" and that Saldaña and Cabrera withheld said royalties belonging to Plaintiffs and converted them for personal use.   This alone is sufficient to allege the required special relationship and thus a plausible entitlement for relief.   See Smith v. Jenkins, 732 F.3d 51, 63 (1st Cir. 2013) (explaining characteristics of fiduciary relationship); Ocasio-Hernández, 640 F.3d at 12 ("[a] plaintiff is not entitled 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action").   Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim for breach of fiduciary duty and thus **DISMISSES** said claim.

### 5.   Fraud

With respect to Plaintiffs' fraud claim, Defendants argue that said claim should be dismissed because Plaintiffs fail to allege with any degree of particularity the circumstances constituting fraud and thus fail to meet the heightened pleading standard required for fraud claims. (Docket No. 186 at 18-20.)   Plaintiffs respond by merely arguing it has satisfied the "who, what, where, and when" requirement of the heightened pleading standard and that Defendants' intent can be generalized.   (Docket No. 188 at 26-27.)

Rule 9(b) of the Federal Rules of Civil Procedure, which governs how fraud or mistake is to be pleaded, creates a higher pleading standard than what is otherwise required by Rule 8(a)(2).

Civil No. 12-1568 (GAG)

See FED. R. CIV. P. 9(b).  "Rule 9(b) requires that [i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake.  This standard means that a

complaint must specify the time, place, and content of an alleged false representation. . . .

Conclusory allegations . . . are not sufficient to satisfy Rule 9(b)."  U.S. ex rel. Gagne v. City of

Worcester, 565 F.3d 40, 45 (1st Cir. 2009) (internal quotation marks omitted).  The complaint is

sufficient if it can "afford a basis for believing that plaintiffs could prove scienter."  Greenstone v.

Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992).

    Under the heightened pleading standard of Rule 9(b), Plaintiffs' allegations are patently

deficient.  Plaintiffs allege that Defendants contracted with Plaintiffs to pay royalties to them and

"[D]efendants never intended to pay the [P]laintiffs their royalties."  (Docket No. 183 at ¶ 95.)

This kind of simple, conclusory pleading is exactly the type general averment that the heightened

standard seeks to filter out.  See Greenstone, 975 F.2d at 25 (explaining purpose of "particularity"

requirement in Rule 9(b)'s first sentence).  Plaintiffs fail to allege any specific facts that allow this

court to infer that Defendants entered into the relevant contracts with the knowledge of material

falsity.  Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' fraud claim

and thus **DISMISSES** said claim.

### 6.  Conversion

    Turning to Plaintiffs' conversion claim, Defendants argue that said claim should be

dismissed because a party cannot claim conversion of property when he has failed to obtain

possession or control over the material subject to the conversion claim.  (Docket No. 186 at 20.)

Plaintiffs briefly respond by arguing that Plaintiffs did in fact have possession or control over the

royalty monies owed to them.  (Docket No. 188 at 26.)

Civil No. 12-1568 (GAG)

Like many of the claims within Plaintiffs' third amended complaint, the allegations contained within this conversion claim, fail to "nudge [the claim] across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.  Plaintiffs allege: "The [D]efendants, Saldaña, LT, Mas Flow, Cabrera, dba/Blue Kraft and/or White Kraft administered [P]laintiffs' compositions pursuant to the above-referenced agreements.  The [D]efendants have failed, and/or refused to pay [P]laintiffs' their royalties.  The [D]efendants have instead converted the same and have used same for their own use and benefit."  (Docket No. 183 at ¶ 99-101.)

The Puerto Rico Supreme Court has held that the intentional tort of conversion is "'not the simple acquisition of another's property, but the malicious and wrongful privation of the ownership rights, the illegal exercise, or the assumption of authority over another's property, thereby depriving the lawful owner or possessor, permanently or for an indefinite period, of its use and enjoyment.' <u>Hull Dobbs Co. v. Superior Court</u>, 81 [P.R. Dec.] 214, 222 (1959); <u>Heirs of Sorbá v. Viñas</u>, 49 [P.R. Dec.] 31 (1935)." <u>Fed. Ins. Co. v. Banco de Ponce</u>, 582 F. Supp. 1388, 1393 (D.P.R. 1984).  Ignoring the legal conclusions contained within Plaintiffs' allegations, Plaintiffs have clearly failed to allege the malicious or wrongful intent by said defendants to deprive Plaintiffs of the royalties owed to them.  More so, Plaintiffs' allegations sound in contract, rather than tort.  Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' conversion claim and thus **DISMISSES** said claim.

### 7.   <u>Two Declaratory Judgment Claims</u>

Plaintiffs also ask this court for declaratory relief in two counts.  In the first count, Plaintiffs ask the court to declare that Plaintiffs are joint authors with Defendants of the compositions listed in the complaint insofar as Defendants are liable to Plaintiffs for money that Plaintiffs are entitled to receive as a result of Defendants' exploitation of such works.  (Docket No.

Civil No. 12-1568 (GAG)

183 at ¶ 84-86.)  In the second count, Plaintiffs ask this court to declare that the assignment of any and all interests, including copyright interests, in said compositions are void against Defendants because the actions of Defendants were and are fraudulent and Defendants induced Plaintiffs to assign their copyright interests in said compositions without intending to pay for the same.  (Id. at ¶ 103-105.)  Defendants argue that these claims should be dismissed because they are simply repackaged breach of contract claims.  (Docket No. 186 at 15.)

The Declaratory Judgment Act gives federal courts jurisdiction over cases and controversies, in which the court already has subject matter jurisdiction, "to declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  That Act merely "makes available an added anodyne for disputes that come within the federal courts' jurisdiction on some other basis."  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995); see also Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950).  Furthermore, a "declaratory judgment is a remedy committed to judicial discretion," A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 331 (1961), and "the exercise of that discretion is properly informed by considerations of equitable restraint."  In re Worksite Inspection of Quality Products, Inc., 592 F.2d 611, 616 (1st Cir. 1979).  "All this is summed up in the general rule that the declaration is an instrument of practical relief and will not be issued where it does not serve a useful purpose."  United States v. Esso Standard Oil Co., 584 F. Supp. 157, 159 (D.P.R. 1984) (internal quotation marks omitted).

With these principles in mind, the court exercises the discretion vested in it to dismiss both declaratory judgment claims.  Like Defendants argue, said claims are merely a rehashing of Plaintiffs' breach of contract claims, which the court has not dismissed.  The court may only declare the rights of Plaintiffs in an actual controversy between them and Defendants and an

**Civil No. 12-1568 (GAG)**

examination of both claims reveals that Plaintiffs are merely asking the court to declare that Defendants breached the relevant contracts between the parties and thus render said contracts void. As the court will address this issue in the breach of contract claim, the declarations are superfluous.  According, the court **GRANTS** Defendants' motion to dismiss both of Plaintiffs' declaratory judgment claims and thus **DISMISSES** said claims.

## IV.    Conclusion

In light of the aforementioned reasoning and rulings, the court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 186.  The remaining claims are: (1) Alicea, Vega, and Montalvo's claim for copyright infringement wherein they claim that Defendants exceeded the scope of their license by creating derivative works using their original compositions; (2) Rivera, Cotto, and Turley's claim for copyright infringement with respect to the compositions that were created outside the terms of their artist and producer agreements; (3) Plaintiffs' breach of contract claim; and (4) Plaintiffs' unjust enrichment claim against Saldaña and Cabrera.

**SO ORDERED.**

In San Juan, Puerto Rico this 5th day of November, 2014.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge